IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SWISS RE CORPORATE SOLUTIONS CAPACITY INSURANCE CORPORATION** and **SWISS RE CORPORATE SOLUTIONS AMERICA INSURANCE CORPORATION,**<br><br>Plaintiffs,<br><br>v.<br><br>**REV GROUP, INC., ELDORADO NATIONAL (CALIFORNIA), INC., ELDORODO NATIONAL (KANSAS), INC., GOSHEN COACH, INC., GENERAL COACH AMERICA, INC., and CHAMPION BUS, INC.**<br><br>Defendants. | No. 23-cv-00205 |

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiffs, Swiss Re Corporate Solutions Capacity Insurance Corporation ("SRCS Capacity") and Swiss Re Corporate Solutions America Insurance Corporation ("SRCS America,"), by and through their counsel BatesCarey LLP and Horst Krekstein & Runyon LLC, for their Amended Complaint for Declaratory Judgment, states as follows:

## NATURE OF THE ACTION

1.  This is a dispute arising out of claims for insurance coverage by REV Group, Inc. ("REV") in connection with a 2017 bus accident that resulted in lawsuits against REV and its affiliates, including *Brittany Jacobs et al. v. Werner Bus Lines, Inc., et al.*, and pending as Case No. 181103180 in the Philadelphia County Court of Common Pleas (the "Jacobs Lawsuit"), which REV defended, litigated, mediated, and ultimately took to trial before providing its

insurers first notice of the claims on December 28, 2022, after the Jacobs Lawsuit had resulted in numerous rulings against REV and after the trial was substantially complete.

2.      The underlying plaintiffs alleged that they were injured as a result of a defectively manufactured bus, and that REV was the corporate successor to the manufacturer of the bus.

3.      The Plaintiffs issued two liability policies that identify REV as a Named Insured and, subject to their terms, provided coverage from July 1, 2016 to July 1, 2017 (the "Policies" or the "Plaintiffs' Policies").

4.      The notice provisions in the Plaintiffs' Policies provided that, when a claim was timely notified, the insurers would have the contractual right to investigate REV's alleged corporate relationships to determine the impact on coverage and REV's liability, evaluate the strength and weaknesses of REV's litigation defenses, participate in settlement negotiations potentially implicating insurance, participate in mediations potentially implicating their Policies, and, in the case of SRCS Capacity, control REV's defense.

5.      Rather that provide notice to Plaintiffs to allow them to exercise these contractual rights, over three years ago REV chose: to evaluate its own potential corporate successor exposure; then to develop and implement a litigation plan based on REV's independent analysis without ever notifying the Plaintiffs; to litigate the Jacobs Lawsuit for years without notifying the Plaintiffs; to repeatedly brief the issue of corporate successor liability without notifying the Plaintiffs; and, even after REV's Motion for Summary Judgment was denied, to take the Jacobs Lawsuit to the verdict stage of a trial before finally notifying the Plaintiffs that the claims even existed.

6.      REV had a duty under the Policies to timely report the Jacobs Lawsuit and the other Underlying Lawsuits to the Plaintiffs.  However, REV did not report the Jacobs Lawsuit to

the Plaintiffs until after trial had begun, over five years since the bus accident and *over three years after REV was served in the Jacobs Lawsuit*. REV's delay in notifying the Plaintiffs of the Jacobs Lawsuit unquestionably violates the notice condition of the Policies, and the Policies therefore afford no coverage to REV.

## THE PARTIES

7. Swiss Re Corporate Solutions Capacity Insurance Corporation is an insurance company organized under the laws of Missouri with its principal place of business in Missouri.

8. Swiss Re Corporate Solutions America Insurance Corporation is an insurance company organized under the laws of Missouri with its principal place of business in Missouri.

9. REV is a Delaware corporation with its principal place of business in Wisconsin.

10. Eldorado National (California), Inc. is a California corporation with its principal place of business in California.

11. Eldorado National (Kansas), Inc. is a Kansas corporation with its principal place of business in Kansas.

12. Goshen Coach, Inc. is an Indiana corporation with its principal place of business in Wisconsin.

13. General Coach America, Inc. is a Delaware corporation with its principal place of business in Michigan.

14. Champion Bus, Inc. is a Delaware corporation with its principal place of business in Michigan.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity as between the Plaintiffs and the Defendants and the amount in controversy exceeds $75,000, exclusive of interest or costs.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as the events or omissions giving rise to this action occurred within this District.

17.     An actual and justiciable controversy exists between the parties because the Plaintiffs are seeking a declaratory judgment that they owe no coverage in connection with lawsuits against the defendants.

## FACTUAL BACKGROUND

18.     In 2005 or 2006, Krystal, a purported corporate predecessor of REV allegedly performed the final upfitting of the chassis on a motor coach bearing VIN 1HBVTAAN36H265273 (the "Bus").

19.     On May 15, 2017, the Bus was involved in an accident.

20.     Beginning in 2018, individuals allegedly injured in the accident sued REV and alleged related companies in at least 22 lawsuits filed in the Philadelphia County Court of Common Pleas alleging that REV and others were in part responsible for their injuries (the "Underlying Lawsuits"), including:

- *Allen, et al. v. Beamer, et al.*, Case ID 181103177;
- *Callender-Daniel, et al. v. Beamer, et al.*, Case ID 181103158;
- *Carter, et al. v. Beamer, et al.*, Case ID 181103078;
- *Clark, et al. v. Beamer, et al.*, Case ID 181103148;
- *Colston-Saunders, et al. v. Thor Industries, et al.*, Case ID 220902589;
- *Copeland, et al. v. Beamer, et al.*, Case ID 181103216;
- *Crawford, et al. v. Beamer, et al.*, Case ID 181103211;
- *Daniel, et al. v. Beamer, et al.*, Case ID 181103207;
- *Davis, et al. v. Beamer, et al.*, Case ID 181103220;

- *Elliott, et al. v. Beamer, et al.*, Case ID 181103185;

- *Euell, et al. v. Beamer, et al.*, Case ID 181103212;

- *Fullerton, et al. v. Beamer, et al.*, Case ID 181103174;

- *Hayes, et al.* v. Beamer, et al., Case ID 181103182;

- *Kelly, et al. v. Beamer, et al.*, Case ID 181103203;

- *Kinsey, et al. v. Thor Industries, Inc., et al.*, Case ID 22100935;

- *Jacobs et al. v. Werner Bus Lines, Inc., et al.*, Case IDs 181103180 and 190501468;

- *Laureano, et al. v. Beamer, et al.*, Case ID 181103228

- *Merritt, et al. v. Beamer, et al.*, Case ID 181103173;

- *Mullen-Fripps, et al. v. Beamer, et al.*, Case ID 181103151;

- *Paulmier, et al. v. Beamer, et al.*, Case ID 181103154;

- *Porterfield, et al. v. Beamer, et al.*, Case ID 181103192; and

- *Rush, et al. v. Beamer, et al.*, Case ID 181103219.

21. One such lawsuit was filed by Brittany Jacobs on November 29, 2018, Brittany Jacobs, in *Brittany Jacobs et al. v. Werner Bus Lines, Inc., et al.*, Case IDs 181103180 and 190501468 in the Philadelphia County Court of Common Pleas (the "Jacobs Lawsuit").

22. On February 18, 2019, Ms. Jacobs filed an Amended Complaint in the Jacobs Lawsuit identifying REV as the corporate successor to Krystal, the entity that allegedly manufactured, supplied, distributed and/or caused to be placed into the stream of commerce the Bus involved in the accident. *See* Exhibit 1, Ms. Jacobs' Amended Complaint.

23. In her Amended Complaint, Ms. Jacobs alleged that she sustained significant and life-threating injures from the accident, including severe brain injury, skull fractures, a subdural hematoma, and subdural hemorrhage.  *Id.*

24. In March 2021, REV participated in a mediation of the Jacobs Lawsuit and the other Underlying Lawsuits.  The mediation did not resolve the Ms. Jacobs' lawsuit or the other pending lawsuits arising out of the accident involving the Bus.

25. On January 3, 2022, REV, controlling its own litigation defense, filed a Motion for Summary Judgment, in which REV asserted that "REV Group [is] not the successor to interest to Krystal."

26. On July 14, 2022, the Philadelphia County Court of Common Pleas entered an order scheduling Ms. Jacobs' lawsuit for trial on December 28, 2022.

27. On July 20, 2022, the Philadelphia County Court of Common Pleas denied REV's Motion for Summary Judgment.

28. On August 9, 2022, REV filed a Motion for Reconsideration in which REV briefed the issue of its alleged successor liability and asserted that REV is "not the successor to interest to Krystal."  The Motion for Reconsideration was denied the next day.

29. On December 13, 2022, REV's petition to appeal the Philadelphia County Court of Common Pleas' denial of REV's Motion for Summary Judgment was denied.

30. Despite unsuccessfully mediating the Jacobs Lawsuit, having its Motion for Summary Judgment denied, having its Motion for Reconsideration denied, and having its leave to appeal that ruling also denied, at no point prior to the Jacobs Lawsuit trial did REV notify Plaintiffs of the existence of the Jacobs Lawsuit.

31. On December 22, 2022, trial in the Jacobs Lawsuit commenced. Without providing notice of the Jacobs Lawsuit to Plaintiffs, REV (a) argued motions in limine; (b) empaneled a jury; (c) participated in opening statements; and (d) cross-examined Jacobs' witnesses.

32. Also on December 22, 2022, Ms. Jacobs filed a Motion to the Court for Judicial Determination that the REV Group Defendants are Successors under the Product-Line Exception.

33. Without providing Plaintiffs notice of the existence of the Jacobs Lawsuit, REV elected to continue control over its own defense and, on December 26, 2022, REV filed a Response to Ms. Jacobs' Motion to the Court for Judicial Determination that the REV Group Defendants are Successors under the Product-Line Exception.

34. On December 27, 2022, the Court granted Ms. Jacobs' Motion to the Court for Judicial Determination that the REV Group Defendants are Successors under the Product-Line Exception.

## THE SRCS CAPACITY POLICY

35. SRCS Capacity (then known as First Specialty Insurance Corporation) issued a liability policy to REV bearing Policy No. IRG 2001384 03 for the policy period July 1, 2016 through July 1, 2017 with applicable limits of $1 million per occurrence and $2 million in the aggregate (the "SRCS Capacity Policy"). The SRCS Capacity Policy is subject to a $500,000 self-insured retention per occurrence for the products-completed operations hazard. A copy of the SRCS Capacity Policy is attached hereto as Exhibit 2 (with premium information redacted).

36. Among other terms, the SRCS Capacity Policy contains Condition 2., Duties in the Event of "Occurrence," Offense, Claim or Suit, which, as modified by the Knowledge and Notice of Occurrence Endorsement (the "Notice Condition"). *See* Exhibit 2 at SR0084, SR0128.

37. The Notice Condition requires that REV see to it that SRCS Capacity is notified as soon as practicable of an "occurrence" or an offense which may result in a claim. *Id*.

38. The Notice Condition also requires that if a claim is made or "suit" is brought against any insured, REV must notify SRCS Capacity as soon as practicable. *Id.*

39. The Notice Condition further requires that REV and any other involved insured must immediately send SRCS Capacity copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit," authorize SRCS Capacity to obtain records and other information, cooperate with SRCS Capacity in the investigation or settlement of the claim or defense against the "suit," and assist SRCS Capacity, upon its request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply. *Id.*

40. The SRCS Capacity Policy also includes a Self-Insured Retention Endorsement that contains additional provisions that are relevant to notice. *Id.* at SR0091.

41. Without limitation, the Self-Insured Retention Endorsement states that SRCS Capacity is entitled to notice as soon as practicable when it appears that an "occurrence," claim, "suit" or loss may exceed the self-insured retention. The Endorsement also states that if any claim has the potential to create an exposure to the coverage provided by SRCS Capacity over the self-insured retention, then SRCS Capacity is entitled to sufficient documentation to prepare and participate in settlement conferences or trials at least sixty days prior to the scheduled date of such settlement conferences or trial. *Id.* at SR0095.

42. The Self-Insured Retention Endorsement states that SRCS Capacity is entitled to prompt notice in the event of any "occurrence" or offense, *without regard to liability,* which results in certain specified injuries or situations. These include "any serious head injury

8

involving brain damage or essential nervous system injuries (including skull fracture) including spinal court injuries, paraplegia, quadriplegia, or paralysis" and "Claims in which the actual damages and anticipated 'defense costs,' exceed fifty percent (50%) of the 'self-insured retention.'" *Id.*

43. Finally, the SRCS Capacity Policy only applies to entities designated as an Insured under Section II – Who Is An Insured or the Broad Form Named Insured endorsement, Form SP 5 086 0412. *Id.* at SR0083, SR0131.

## THE SRCS AMERICA POLICY

44. SRCS America (then known as North America Specialty Insurance Company) issued an excess liability policy to REV bearing Policy No. EXS 2000165 02 for the policy period July 1, 2016 through July 1, 2017 with limits of $25 million per occurrence and in the aggregate (the "SRCS America Policy"). The SRCS America Policy applies excess over AXIS Surplus Insurance Company ("AXIS") Policy No. EAU781897/01/2016 for the policy period July 1, 2016 through July 1, 2017 with applicable limits of $5 million per occurrence and in the aggregate (the "AXIS Policy"). A copy of the SRCS America Policy is attached hereto as Exhibit 3 (with premium information redacted). A copy of the AXIS Policy is attached hereto as Exhibit 4 (with premium information redacted).

45. The SRCS America Policy follows form to the AXIS Policy and only applies to losses covered by the AXIS Policy, as reflected in Paragraph I.(a) of the SRCS America Policy:

> If any **Underlying Insurance** excludes or otherwise does not cover an occurrence, loss or claim (for reasons other than exhaustion of the applicable aggregate limits of liability by actual payment of **Loss**), then this policy shall not cover such occurrence, loss or claim.

*See* Exhibit 3 at SR0145.

46. The SRCS America Policy contains General Condition (a), Duties in the Event of an Occurrence, Claim or Suit, which states, in part, as follows:

> As soon as reasonably practicable after the Insured becomes aware of any occurrence, loss or claim which, in the Insured's reasonable judgment, is likely to involve this policy, the Insured shall notify [SRCS America] of such occurrence, loss or claim in writing at the address stated in the Declarations. For each such occurrence, loss or claim notified, such Insured shall, as soon as reasonably practicable, report any significant developments that become known to such Insured during the handling of the loss or claim and which may affect the final disposition or amount of any settlement.

*Id.* at SR0148-49.

## THE COVERAGE DISPUTE

47. On December 28, 2022, in the midst of trial and over four years after the Jacobs Lawsuit was filed, REV provided to Plaintiffs and AXIS first notice of existence of the accident, the Jacobs Lawsuit and the Underlying Lawsuits.

48. On December 30, 2022, REV provided to Plaintiffs and AXIS first notice of a potential settlement of the Jacobs Lawsuit and advised that REV had exhausted the self-insured retention for which REV was responsible.

49. On December 30, 2022, Plaintiffs reserved rights and requested more information about the Jacobs Lawsuit and the other lawsuits filed by individuals allegedly injured in the accident.

50. Upon information and belief, on January 2, 2023 (just six days after providing notice to its insurers), REV settled the Jacobs Lawsuit for $11.5 million. *See* Exhibit 5, *Crash Victim Reaches $11.5M Settlement in Suit Over Allegedly Defective Bus*.

51. REV Group: (1) failed to provide notice of the accident, the Jacobs Lawsuit, or the Underlying Lawsuits to SRCS Capacity "as soon as practicable" or "as soon as reasonably practicable" (2) failed to "immediately" send SRCS Capacity copies of demands, notices,

10

summons, and legal papers received in connection with the Jacobs Lawsuit and all Underlying Lawsuits; (3) failed to "promptly" provide SRCS with notice of Ms. Jacobs' alleged severe head injuries; and (4) failed to "promptly" provide SRCS with notice of the erosion and/or potential erosion of 50% of the SRCS Capacity Policy's self-insured retention.

52. REV's violation of the notice provisions in the Plaintiffs' Policies precludes coverage for REV in connection with the Jacobs' Lawsuit and the other Underlying Lawsuits.

## CAUSES OF ACTION

## COUNT I – DECLARATORY JUDGMENT (JACOBS LAWSUIT)

**(No Duty to Defend or Indemnify REV – Late Notice)**

53. Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1 through 54 as though set forth in full herein.

54. REV received notice of the accident and the Jacobs Lawsuit no later than March 4, 2019 when REV was served with Ms. Jacobs' Amended Complaint.

55. The SRCS Capacity Policy requires that REV see to it that SRCS Capacity is notified as soon as practicable of an "occurrence" or an offense which may result in a claim.

56. The SRCS Capacity Policy requires that REV notify SRCS Capacity as soon as practicable if a claim is made or "suit" is brought against REV.

57. The SRCS Capacity Policy requires that REV immediately send SRCS Capacity copies of any demands, notices, summonses, or legal papers received in connection with a claim or "suit."

58. The SRCS Capacity Policy also requires that REV notify SRCS Capacity promptly in the event of an "occurrence" or offense, without regard to liability, which results in any serious head injury involving brain damage or essential nervous system injuries (including skull fracture).

11

59. The SRCS Capacity Policy also requires that REV notify SRCS Capacity promptly in the event of an "occurrence" or offense, without regard to liability, which results in claims in which the actual damage and anticipated "defense costs," exceeding fifty percent of the "self-insured retention."

60. The SRCS America Policy requires that as soon as reasonably practicable after REV becomes aware of any occurrence, loss or claim which, in REV's reasonable judgment, is likely to involve the SRCS America Policy, REV shall notify SRCS America of such occurrence, loss, or claim in writing.

61. The SRCS America Policy also does not apply to any occurrence, loss, or claim not covered by the underlying AXIS Policy for reasons other than exhaustion of the applicable aggregate limits of liability by actual payment of Loss.

62. The claim alleged in the Jacobs Lawsuit constitutes an "occurrence" that may result in a claim.

63. To the extent it constitutes an "occurrence," the Jacobs Lawsuit involves allegations of serious head injury involving brain damage.

64. To the extent it constitutes an "occurrence," the defense costs incurred in the Jacobs Lawsuit exceeded fifty percent of the "self-insured retention."

65. REV failed to place Plaintiffs on notice of the "occurrence" at issue in connection with the accident until more than five years after said "occurrence."

66. The Jacobs Lawsuit constitutes a "suit" against REV.

67. REV never asked the Plaintiffs to defend REV in the Jacobs Lawsuit.

68. REV did not report to the Plaintiffs the Jacobs Lawsuit or the "occurrence" alleged in the Jacobs Lawsuit until December 28, 2022, *over three years after REV was served in the Jacobs lawsuit*.

69. REV did not immediately send the Plaintiffs copies of any demands, notices, summonses, or legal papers received in connection with the Jacobs Lawsuit until December 28, 2022, *over three years after REV was served in the Jacobs lawsuit*.

70. REV's delay in notifying the Plaintiffs of the Jacobs Lawsuit violated the notice provisions in the Plaintiffs' Policies.

71. REV has therefore forfeited coverage under the Policies based upon the breach of the notice provisions in the Plaintiffs' Policies, and the Plaintiffs have no duty to defend or indemnify REV in the Jacobs Lawsuit.

72. Furthermore, Plaintiffs were prejudiced by REV's failure to provide timely notice of the Jacobs Lawsuit.

73. Plaintiffs were deprived of the opportunity to meaningfully participate in resolution strategy pertaining to the Jacobs Lawsuit and further deprived of the opportunity to participate in the defense of the Jacobs Lawsuit.

WHEREFORE, the Plaintiffs request that this Court enter judgment in its favor and against REV, declaring that they have no obligation to defend or indemnify REV in the connection with the Jacobs Lawsuit, and granting the Plaintiffs any other and further relief deemed just and appropriate.

**COUNT II – DECLARATORY JUDGMENT (ALL UNDERLYING LAWSUITS)**
**(No Duty to Defend or Indemnify REV – Late Notice)**

74. Plaintiffs incorporates by reference each and every allegation set forth in paragraphs 1 through 54 as though set forth in full herein.

75. Upon information and belief, REV received notice no later than 2018 of the accident and certain lawsuits filed by individuals allegedly injured in the accident.

76. The SRCS Capacity Policy requires that REV see to it that SRCS Capacity is notified as soon as practicable of an "occurrence" or an offense which may result in a claim.

77. The SRCS Capacity Policy requires that REV notify SRCS Capacity as soon as practicable if a claim is made or "suit" is brought against REV.

78. The SRCS Capacity Policy requires that REV immediately send SRCS Capacity copies of any demands, notices, summonses, or legal papers received in connection with a claim or "suit."

79. The SRCS Capacity Policy also requires that REV notify SRCS Capacity promptly in the event of an "occurrence" or offense, without regard to liability, which results in any serious head injury involving brain damage or essential nervous system injuries (including skull fracture).

80. The SRCS Capacity Policy also requires that REV notify SRCS Capacity promptly in the event of an "occurrence" or offense, without regard to liability, which results in claims in which the actual damage and anticipated "defense costs," exceeding fifty percent of the "self-insured retention."

81. The SRCS America Policy requires that as soon as reasonably practicable after REV becomes aware of any occurrence, loss or claim which, in REV's reasonable judgment, is likely to involve the SRCS America Policy, REV shall notify SRCS America of such occurrence, loss, or claim in writing.

82. The SRCS America Policy also does not apply to any occurrence, loss, or claim not covered by the underlying AXIS Policy for reasons other than exhaustion of the applicable aggregate limits of liability by actual payment of Loss.

83. The claims alleged in the Underlying Lawsuits constitute an "occurrence" that may result in a claim.

84. To the extent it constitutes an "occurrence," the defense costs incurred in the Underlying Lawsuits exceeded fifty percent of the "self-insured retention."

85. The Underlying Lawsuits constitute "suits" against REV.

86. Prior to the filing of this action, REV never asked the Plaintiffs to defend REV in the Underlying Lawsuits.

87. Prior to the filing of this action, REV never asked the Plaintiffs to indemnify REV in the Underlying Lawsuits.

88. REV did not immediately send the Plaintiffs copies of any demands, notices, summonses, or legal papers received in connection with the Underlying Lawsuits until December 28, 2022.  Rather, contained within its specific notice of the Jacobs Lawsuit were references, without specificity, to some, but not all, of the other Underlying Lawsuits.

89. REV has therefore forfeited coverage under the Policies based upon the breach of the notice provisions in the Plaintiffs' Policies, and the Plaintiffs have no duty to defend or indemnify REV in the Underlying Lawsuits.

90. Furthermore, Plaintiffs have been prejudiced by the failure of REV to provide timely notice of the Underlying Lawsuits.

WHEREFORE, the Plaintiffs request that this Court enter judgment in its favor and against REV, declaring that they have no obligation to defend or indemnify REV in the

connection with the Underlying Lawsuits, and granting the Plaintiffs any other and further relief deemed just and appropriate.

### COUNT III – DECLARATORY JUDGMENT

**(No Duty to Defend or Indemnify Entity Other than REV)**

91. The Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1 through 54 as though set forth in full herein.

92. No party other than REV has claimed to be an Insured, Named Insured, or Additional Insured under the Plaintiffs' Policies.

93. No party other than REV qualifies as an Insured, Named Insured, or Additional Insured under the Plaintiffs' Policies.

94. To the extent that any party other than REV claims to be an Insured, Named Insured, or Additional Insured under the Plaintiffs' Policies, their delay in notifying the Plaintiffs of the Jacobs Lawsuit and the Underlying Lawsuits violates the notice provisions in the Plaintiffs' Policies.

95. Eldorado National (California), Inc., Eldorado National (Kansas), Inc., Eldorado National Kansas, Inc., Goshen Coach, Inc., General Coach America, Inc., and Champion Bus, Inc. have therefore forfeited coverage under the Policies based upon the breach of the notice provisions in the Plaintiffs' Policies, and the Plaintiffs have no duty to defend or indemnify Eldorado National (California), Inc., Eldorado National (Kansas), Inc., Eldorado National Kansas, Inc., Goshen Coach, Inc., General Coach America, Inc., or Champion Bus, Inc. in the Jacobs Lawsuit and the Underlying Lawsuits.

WHEREFORE, the Plaintiffs requests that this Court enter judgment in its favor and against the Defendants, declaring that Plaintiffs have no obligation to defend or indemnify Eldorado National (California), Inc., Eldorado National (Kansas), Inc., Eldorado National

Kansas, Inc., Goshen Coach, Inc., General Coach America, Inc., or Champion Bus, Inc. in the Jacobs Lawsuit and the other Underlying Lawsuits under the Plaintiffs' Policies, declaring that there is no coverage under the Policies, and granting the Plaintiffs any other and further relief deemed just and appropriate.

        Respectfully submitted,

**SWISS RE CORPORATE SOLUTIONS CAPACITY INSURANCE CORPORATION and SWISS RE CORPORATE SOLUTIONS AMERICA INSURANCE CORPORATION,**

By: /s/ I. Jordan Lowe
    One of its attorneys

Bill Krekstein
**Horst Krekstein & Runyon LLC**
610 W. Germantown Pike, Suite 350
Plymouth Meeting, PA 19462
Phone: 484.243.6878
wkrekstein@hkr.law

Adam H. Fleischer (admitted *pro hac vice*)
I. Jordan Lowe (admitted *pro hac vice*)
**BatesCarey LLP**
191 North Wacker Drive, Suite 2400
Chicago, IL 60606
Phone: 312.762.3100
afleischer@batescarey.com
ilowe@batescarey.com